UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-62330-COHN/STRAUSS

PAULA ANDREA COLLINS,

    Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 24] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 25]. This case has been referred to me, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, for further proceedings, up to and including a Report and Recommendation concerning the case's disposition [DE 5]. I have reviewed both motions, all summary judgment materials, and the record in this case. For the reasons discussed herein, I respectfully **RECOMMEND** that Plaintiff's Motion [DE 24] be **GRANTED IN PART and DENIED IN PART**[1] and that Defendant's Motion [DE 25] be **DENIED**.

---

[1] Plaintiff's Motion requests that the Commissioner's decision be reversed and that this matter be remanded for an award of benefits, or in the alternative, that this matter be remanded for further administrative proceedings. Because I am only recommending that this case be remanded for further proceedings consistent with this Report, I am recommending that Plaintiff's Motion be granted in part and denied in part.

# BACKGROUND

## I. PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits and supplemental security income on May 13, 2016, alleging a disability onset date of September 24, 2015 ("Alleged Onset Date"). Tr. 343-56. Her claims were denied initially and upon reconsideration. Tr. 92-159. Thereafter, Plaintiff appeared with counsel at a hearing before an Administrative Law Judge ("ALJ") on February 26, 2020; a medical expert, Joseph Carver, and a vocational expert ("VE"), Lisa Goudy, also testified at the hearing.[2] Tr. 49-81. On March 25, 2020, the ALJ issued her decision, finding that Plaintiff was not "disabled" under the Social Security Act. Tr. 29-41. On October 6, 2020, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner. Tr. 1-3. Consequently, on November 16, 2020, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II. PLAINTIFF'S BACKGROUND

Plaintiff, who was born in 1968, Tr. 344, was 47 on the Alleged Onset Date and 51 at the time of the 2020 hearing before the ALJ. She speaks and understands English. Tr. 388. Plaintiff dropped out of high school in 11th grade, Tr. 61; however, around 1999, she graduated from Ruby's Academy and obtained a certificate as a home health aide. Tr. 60, 63, 485. In late 2019, Plaintiff completed a six-week training program to become a certified nursing assistant, but she had not yet taken the state exam as of the time of her hearing before the ALJ. Tr. 62-63.

---

[2] The ALJ had previously held a hearing in July 2018, at which Plaintiff did not appear (though Plaintiff's counsel did appear at that hearing). Tr. 82-91. Following the July 2018 hearing, the ALJ issued an unfavorable decision. Tr. 160-77. However, the Appeals Council remanded the matter to the ALJ, Tr. 183-86, who subsequently held a new hearing on February 26, 2020.

### III.     HEARING TESTIMONY

Plaintiff, the ME, and the VE testified at the hearing before the ALJ. Plaintiff testified regarding her educational background and work experience. *See* Tr. 58-67. At the time of the hearing, Plaintiff was still working as a home health aide, though generally under 30 hours per week. Tr. 58. Although Plaintiff continued to work part-time, she testified that she experienced difficulty working because she was having too many problems "dealing with people." Tr. 68.

The ME testified after Plaintiff. He testified that Plaintiff has a history of depression and a diagnosis of unspecified depressive disorder. Tr. 72. He also discussed Plaintiff's low IQ score (under 70), opining that her level of functioning is higher than her IQ score indicates. Tr. 72. In support of this opinion, the ME noted that Plaintiff has a driver's license, experience as a health aide, and certified nursing assistant training, and that Plaintiff is articulate and reads at a 6th grade level. Tr. 72-73. As such, the ME determined that Plaintiff likely has upper borderline intellectual functioning. Tr. 73. The ME also testified that Plaintiff has no consistent anxiety symptoms and that while her records reflect several instances of irritation or frustration, such instances do not last more than a couple days. Tr. 73. As to other diagnoses, the ME testified that Plaintiff was diagnosed with schizoaffective disorder solely based on her reports of auditory hallucinations and personality disorder based on distrust and suspiciousness of others, as well as instability in interpersonal relationships. Tr. 73-74. Finally, the ME opined that Plaintiff has a moderate limitation in social interaction and mild limitations in: (1) understanding, remembering, and applying information; (2) concentration, persistence, and pace; and (3) adaptation. Tr. 74-75.

Next, the VE testified. Initially, she provided the DOT (Dictionary of Occupation Titles) classification for Plaintiff's past relevant work as a home health aide. Tr. 77. The ALJ then asked the VE whether a hypothetical individual with Plaintiff's age, education, and work experience,

who can perform the full range of exertional demands of work, but who is limited to occasional interaction with supervisors and co-workers to complete work-related tasks, is able to perform Plaintiff's past work. Tr. 77. The VE testified that the hypothetical individual could perform both Plaintiff's past relevant work and other work, including the jobs of industrial cleaner, hand packager, and laundry worker. Tr. 78. These three additional jobs collectively have approximately 757,000 positions in the national economy. Tr. 78.

## **STANDARD OF REVIEW**

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

# DISCUSSION

## I.  THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)). *See also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520 and 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five. "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. § 404, subpt. P, app. 2. The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. §§ 404.1569, 416.969. The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. §§ 404.1569, 416.969. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted). *See also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

## II.     ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled. Tr. 41. Initially, the ALJ addressed some preliminary issues and outlined in detail the five steps of the sequential evaluation. Tr. 29-31. Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since the Alleged Onset Date. Tr. 31. The ALJ noted that Plaintiff had worked and earned income following the Alleged Onset Date, though such work did not qualify as SGA. Tr. 32. Next, the ALJ found that Plaintiff had the severe impairment of unspecified depressive disorder. Tr. 32. Additionally, the ALJ determined that Plaintiff's anxiety disorder, intellectual disorder, personality disorder, schizoaffective disorder, and vertigo are not severe. Tr. 32. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 32.

The ALJ next assessed Plaintiff's RFC, determining, "[a]fter careful consideration of the entire record," that Plaintiff has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: She could tolerate occasional interaction with supervisors and coworkers to complete work related tasks." Tr. 35. As part of this assessment, the ALJ noted that she considered all of Plaintiff's symptoms and the extent to which her symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. Tr. 35. Additionally, the ALJ noted that she considered the opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927.[3] Tr. 35.

---

[3] These regulations govern the evaluation of opinion evidence for claims filed prior to March 27, 2017.

In assessing Plaintiff's RFC, the ALJ noted Plaintiff's allegations of disability due to her mental health issues and discussed Plaintiff's testimony regarding how Plaintiff became agitated with people while working in their homes. Tr. 36. However, while the ALJ found that Plaintiff's impairments could reasonably be expected to cause her symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." Tr. 36. The ALJ explained that Plaintiff's statements were inconsistent because: (1) "mental exams showed normal mood, concentration, speech, and motor movement"; (2) Plaintiff "had almost no psychological treatment, no history of taking medication and no hospitalization, and she had no suicidal ideation; and (3) "[r]egarding low intellectual function, [Plaintiff] managed to become a nurse's aide, worked part time and earned SGA at times." Tr. 36.

The ALJ then proceeded to discuss the medical evidence of record, including evaluations completed by Ilene Kaskel, Psy. D., an evaluation completed by an agency consultative examiner, and Plaintiff's therapy records. Tr. 36-38. Additionally, the ALJ evaluated and weighed the opinion evidence, giving partial weight to Dr. Kaskel's opinion, great weight to the ME's opinion, little weight to the state agency consultants' opinions regarding physical limitations, partial weight to their opinions regarding mental limitations, no weight to the opinion of Adele Besner, Psy. D., and great weight to the opinion of Richard D. Goldstein, M.D. Tr. 38-39. After evaluating the opinion evidence, the ALJ concluded her RFC discussion, stating that her RFC determination

> is supported by substantial evidence of record as it relates to the work related limitations caused by [Plaintiff's] impairments. [Plaintiff] is limited to some social interaction, due to depression, as noted above. Mental status exams were mostly unremarkable for concentration, with mild memory impairment, normal speech, no suicidal ideation, and euthymic mood at times, except for some occasional depressed mood. The opinion of Drs. Carver and DeCubas [one of the state agency consultants] supports the [RFC] limitations. In compliance with the Appeals

9

>Council remand order, the undersigned gave further consideration for [Plaintiff's RFC], as noted above.

Tr. 39 (internal citations omitted).

After assessing Plaintiff's RFC, the ALJ found that Plaintiff is capable of performing her past relevant work as a home health aide (both as actually and generally performed). Tr. 40. Nonetheless, the ALJ also proceeded to determine, based on Plaintiff's age, education, work experience, and RFC, that there are additional jobs existing in significant numbers in the national economy that Plaintiff can also perform. Tr. 40-41. Therefore, the ALJ concluded that Plaintiff "has not been under a disability" from the Alleged Onset Date through the date of the ALJ's decision. Tr. 41.

## III.   ANALYSIS

Plaintiff raises two issues. Both implicate the ALJ's consideration of the evidence in connection with the formulation of Plaintiff's RFC. First, Plaintiff takes issue with the ALJ's evaluation of the medical opinion evidence. Second, Plaintiff contends that the ALJ erred in evaluating Plaintiff's subjective complaints. As discussed in section A below, I agree with Plaintiff that the ALJ's evaluation of certain medical opinion evidence requires remanding this matter for further proceedings. However, as discussed in Section B below, Plaintiff has failed to establish any error in the ALJ's evaluation of Plaintiff's subjective complaints.

### A.  ALJ'S EVALUATION OF MEDICAL OPINION EVIDENCE

Because Plaintiff's claims for disability insurance benefits and supplemental security income were filed prior to March 27, 2017, the ALJ was required to consider the opinion evidence in Plaintiff's case in accordance with 20 C.F.R. §§ 404.1527 and 416.927. These regulations require ALJs to consider several factors when evaluating medical opinions, including the following: "(1) the examining relationship; (2) the treatment relationship, including the length and

nature of the treatment relationship; (3) whether the medical opinion is amply supported by relevant evidence; (4) whether an opinion is consistent with the record as a whole; and (5) the doctor's specialization." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1260 (11th Cir. 2019) (citing 20 C.F.R. § 404.1527(c)). Further, when weighing medical opinion evidence,

> the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. Therefore, when the ALJ fails to state with at least some measure of clarity the grounds for his decision, [courts] will decline to affirm simply because some rationale might have supported the ALJ's conclusion. In such a situation, to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (internal citations and quotation marks omitted).

### 1. Dr. Kaskel

Plaintiff primarily contests the ALJ's treatment of Dr. Kaskel's opinions, and for good reason. In evaluating and weighing Dr. Kaskel's opinions, the ALJ assigned partial weight, stating as follows:

> As for the opinion evidence, Ilene Kaskel, Psy.D. examined the claimant and opined in November 2015 that she would have difficulties completing all but most menial/basic type tasks, and she would need additional time and attention to learn and complete tasks. She would likely need repetition of information and visual reminders, and she will have difficulty interacting with others. She may experience fluctuations in persistence and poor frustration tolerance, and should avoid overly stressful work settings. Dr. Kaskel recommended the claimant be evaluated for working with others and handling stress at work. She could also benefit from a psychiatric evaluation for medication and behavioral therapy. The undersigned gives partial weight to this opinion, because it is partly consistent with the record as a whole. Dr. Kaskel's finding that the claimant could do basic menial work at her own pace is not supported by the evidence, but the emphasis on her social limitations and poor frustration tolerance are supported by evidence. Dr. Kaskel based her findings on two exams, intelligence testing and adaptive function testing. While her IQ was low at 61, Dr. Kaskel noted the claimant was a poor historian and

>the consultative examiner noted she put forth low effort. Regarding adaptive function, the claimant managed to obtain a certificate as a home health aide and she was able to work, even working part-time as of the hearing, and she was able to attend church, get along with friends and family, shop in stores, and drive. Although the claimant said she heard voices, a therapist noted they were likely related to her vertigo, and her claim that she saw visions was attributed to double vision from the wrong glasses prescription.

Tr. 38.

With respect to the ALJ's treatment of Dr. Kaskel's opinion, Plaintiff first contends that the ALJ's decision to reject Dr. Kaskel's opinion regarding basic menial work is not supported by substantial evidence. I agree. Both parties appear to acknowledge that the ALJ primarily rejected this opinion for two reasons: (1) because Dr. Kaskel noted that Plaintiff was a poor historian; and (2) because the consultative examiner (Adele Besner, Psy. D.) noted that Plaintiff put forth low effort. *See* Plaintiff's Motion at 13-14; Defendant's Motion at 10. As to Plaintiff being a poor historian, Dr. Kaskel stated that Plaintiff "was a poor historian at times and had difficulties recalling dates of events." Tr. 487. I do not see how this statement could reasonably serve as a basis to undermine Dr. Kaskel's opinion regarding basic menial work, and the ALJ has failed to adequately explain why she believes otherwise. As Plaintiff has indicated, the ALJ's determination in this regard is a "far-from-obvious conclusion." Plaintiff's Motion at 13 (quoting *Schink*, 935 F.3d at 1264). The ALJ's "low effort" rationale fares even worse. This statement originated in Dr. Besner's report, not from Dr. Kaskel. Dr. Besner observed that Plaintiff "did not appear to put forth her best effort on all tasks." Tr. 477. The fact that Dr. Besner made this observation during a *December 2015* examination in which Dr. Kaskel had no involvement does not reasonably or rationally have any bearing on Dr. Kaskel's *November 2015* opinion regarding basic menial work. Because a reasonable person would not accept the ALJ's rationale as adequate to support the ALJ's conclusion regarding Dr. Kaskel's opinion, it does not constitute substantial

12

evidence. *See Moore*, 405 F.3d at 1211 ("Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").

An additional issue that Plaintiff raises related to Dr. Kaskel's opinion concerns the ALJ's statement that Dr. Kaskel's "emphasis on [Plaintiff's] social limitations and poor frustration tolerance are supported by evidence." Plaintiff argues that the ALJ's RFC determination does not adequately account for Dr. Kaskel's opinion regarding social limitations even though the ALJ found the opinion to be supported by the record. Specifically, Plaintiff notes that the ALJ did not address any potential limitation related to working with the public notwithstanding Dr. Kaskel's opinion that Plaintiff may have difficulty working with supervisors, coworkers, or the public. Tr. 498, 505. Although Defendant notes this opinion, *see* Defendant's Motion at 3, Defendant does not appear to address this argument in her motion. At any rate, I agree with Plaintiff that the ALJ should have explained why she did not include any limitation related to interacting with the public – the ALJ only included limitations related to interacting with supervisors and coworkers. The ALJ's decision to not include a limitation related to interacting with the public may have been perfectly reasonable. The problem, however, is that the ALJ failed to adequately explain why she did not include such a limitation, which complicates this Court's review. *See Schink*, 935 F.3d at 1269 ("[T]the ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right." (citation omitted)).

Thus, on remand, the ALJ should, at a minimum, provide further explanation regarding her decision to reject Dr. Kaskel's opinion concerning basic menial work, and the ALJ should explain why she did not include a limitation in Plaintiff's RFC related to interacting with the public. Additionally, as Plaintiff points out in her motion, certain aspects of the ALJ's discussion of Dr.

13

Kaskel's opinion may benefit from greater clarity. For instance, it is not entirely clear what portion(s) of Dr. Kaskel's opinion the ALJ is discounting when she discusses adaptive functioning. *See* Tr. 38. While this partial lack of clarity does not require remand on its own, the other issues discussed above – regarding basic menial work and interactions with the public – do warrant remand for the ALJ to properly assess Dr. Kaskel's opinion in conjunction with the other evidence.

### 2. Other Opinion Evidence

In her motion, Plaintiff also argues that the ALJ erred in her assessment of the ME's opinion evidence. Defendant, however, also interprets Plaintiff's Motion to object to the ALJ's treatment of opinion evidence from Dr. DeCubas and Dr. Besner (in addition to the opinion evidence from Dr. Kaskel and the ME). As to Dr. DeCubas, Plaintiff confirms in her reply that she did not argue the ALJ should have given more weight to the opinions of the state agency consultants (which include Dr. DeCubas). [DE 27] at 5. Rather, Plaintiff's point regarding the state agency consultants' opinions in her motion is that, like Dr. Kaskel, they too opined that Plaintiff had some limitations in interacting with the general public. *See* Plaintiff's Motion at 15-16. As discussed in the preceding section, I agree that the ALJ needs to account for why she did not include any such limitation in Plaintiff's RFC.

As to Dr. Besner, Plaintiff does initially remark that the ALJ failed to properly evaluate Dr. Besner's opinions. Plaintiff's Motion at 13. However, Plaintiff does not explain how this is so. Instead, Plaintiff's discussion of Dr. Besner's opinions is primarily in the context of arguing that Dr. Besner's opinions are consistent with Dr. Kaskel's opinions.

In any event, to the extent that Plaintiff does challenge the ALJ's decision to give no weight Dr. Besner's opinions, her challenge fails. Dr. Besner opined that Plaintiff "may not be able to perform *some of the duties required by a workplace*. Her personality, current emotional state, and

14

low cognitive abilities *may affect her ability to perform at this time*. She will require assistance with the management of her funds." Tr. 478 (emphasis added). The ALJ's critique of Dr. Besner's opinions is supported by substantial evidence because the ALJ reasonably and rationally concluded that Dr. Besner's opinions were vague and that Dr. Besner, who conducted a one-time exam, did not provide a functional analysis. Additionally, while Dr. Besner's statement regarding Plaintiff's lack of effort did not reasonably have any bearing on Dr. Kaskel's exam (as discussed above), the ALJ could reasonably conclude that Plaintiff's lack of effort exhibited in conjunction with Dr. Besner's exam may have impacted Dr. Besner's exam.

> That leaves the ME. In evaluating and weighing his opinions, the ALJ stated as follows:
>
> > In compliance with the Appeals Council remand order, a medical expert was called to testify at the hearing. Joseph Carver, M.D., a medical expert, testified at the hearing that the claimant's symptoms did not meet a listing. In addition, Dr. Carver testified the claimant's depression was severe, but the rest of her impairments were mild, and even though her full scale IQ score was 61, her level of functioning was higher; she had a driver's license and she was able to work as a health aide with a sixth grade reading level. According to Dr. Carver, the claimant had mild limitation in understanding, moderate limitation in social interaction, and mild limitation in both concentration and adapting and managing. *The undersigned gives great weight to this opinion, because it is consistent with the record for the reasons noted above*.

Tr. 38 (internal citation omitted) (emphasis added).

Plaintiff appropriately highlights in her motion that the most problematic aspect of the ALJ's evaluation of the ME's opinions is that the ALJ failed to specifically explain the basis for finding them to be consistent with the record. By merely stating "for the reasons noted above" without further explanation, when it is not otherwise apparent what specific reasons the ALJ is relying upon, the ALJ failed "to state with at least some measure of clarity the grounds for [her] decision" to assign great weight to the ME's opinions. *Winschel*, 631 F.3d at 1179; *see also Delgado v. Comm'r of Soc. Sec.*, No. 20-14234, 2021 WL 4099237, at *5 (11th Cir. Sept. 9, 2021) ("The ALJ afforded this opinion little weight on the grounds that it is 'not supported by the record.'

This explanation is not sufficient. The ALJ never specified what evidence in the record fails to support Dr. Del Rio's opinion. The failure makes the ALJ's decision to discount Dr. Del Rio's opinion difficult to evaluate with any sort of precision." (footnote omitted)). Therefore, remand is also required for the ALJ to more specifically articulate the reasons supporting the weight she assigns to the ME's opinions.

### B. ALJ'S EVALUATION OF PLAINTIFF'S SUBJECTIVE COMPLAINTS

The ALJ's decision to discount Plaintiff's subjective complaints is supported by substantial evidence. When a claimant attempts to prove that she is disabled by providing testimony regarding her pain or other subjective symptoms, she must show: (1) evidence of an underlying medical condition; and (2) either "objective medical evidence that confirms the severity of the alleged pain [or subjective symptoms] arising from that condition or . . . that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain" or subjective symptoms. *Dyer*, 395 F.3d at 1210; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard applies to both complaints regarding subjective pain and complaints regarding other subjective conditions. *Holt*, 921 F.2d at 1223. In order to discredit a claimant's subjective complaints, an ALJ must "clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (citing *Foote*, 67 F.3d at 1561-62).

Here, the ALJ discounted Plaintiff's subjective complaints, stating as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because mental exams showed normal mood, concentration, speech, and motor movement. She had almost no psychological treatment, no history of taking medication and no hospitalization, and she had no suicidal ideation. Regarding low intellectual function, the claimant managed to become a nurse's aide, worked part time and earned SGA at times.

Tr. 36 (internal citations omitted).  Plaintiff raises two issues.  First, she contends that the ALJ's finding regarding normal mood, concentration, speech, and motor movement was improperly cherry-picked from the record given that there are more instances in the record contrary to this finding.  Second, Plaintiff contends that the ALJ's finding regarding a lack of psychological treatment fails to account for Plaintiff's apprehension towards seeking treatment – apprehension caused by her mental symptoms.

Plaintiff's first argument is somewhat convincing but ultimately fails.  As Plaintiff notes, although her August 2015 mental exam reportedly revealed normal mood, concentration, speech, and motor movement, several other exams reportedly revealed contrary findings, including issues with mood and insight.  *See* Plaintiff's Motion at 23 (citing Tr. 399, 477, 487, 503, 513, 522-524, 531, 533, 535, 541).  However, the ALJ did not ignore such findings as Plaintiff contends.  In fact, the ALJ specifically discussed one examiner's notes indicating that Plaintiff "exhibited a mildly circumstantial thought process with a dysphoric mood," had reduced comprehension, "misunderstood directions and needed repetition," and "was lethargic and distractible, with reduced insight and judgment." Tr. 37.  The ALJ also discussed the consultative examiner's notes indicating that Plaintiff's mood was angry and that her insight and judgment were poor, but her attention and concentration were good.  Tr. 37.  Thus, the ALJ considered findings pointing both ways, and her decision shows that she considered all of the evidence.  Although her conclusion appears to be at odds with the majority of the reported observations in the record, it is nevertheless supported by more than a scintilla of evidence.  Still, had the ALJ's decision to discount Plaintiff's subjective complaints been solely based on the rationale regarding mental exams, the efficacy of the ALJ's credibility determination would be a close call.  But, as indicated above, the ALJ also articulated other reasons in support of her determination.

17

Plaintiff's second argument takes issue with one of those other reasons provided by the ALJ.  Specifically, Plaintiff argues that "[t]he ALJ's adverse credibility determination is not rescued by the ALJ's reliance on Plaintiff's lack of psychological treatment as a reason to discount her allegations."  Plaintiff's Motion at 23.  Plaintiff does not appear to dispute the ALJ's finding regarding a lack of treatment (a finding that is supported by the record).  However, Plaintiff now contends that the lack of treatment is not an adequate reason to discount her subjective complaints given that her symptoms interfered with her treatment and/or her decision to pursue or not pursue treatment.  While it may have been reasonable for the ALJ to disregard Plaintiff's lack of treatment given that there is a small amount of evidence of Plaintiff's apprehensive attitude towards treatment, it was not unreasonable for the ALJ to conclude that Plaintiff's lack of psychological treatment was an adequate reason to discount Plaintiff's subjective complaints.  Moreover, the ALJ's second subset of reasons for discounting Plaintiff's subjective complaints was not simply based on the lack of psychological treatment.  It was also based on Plaintiff having no history of taking medication, no hospitalization, and no suicidal ideations.  Such considerations are relevant to an ALJ's credibility determination.  *See Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017) ("ALJs are permitted to consider the type of a treatment a claimant received in assessing the credibility of her subjective complaints.  As we explained above, for Horowitz's mental impairments, her treatment plan was conservative in nature and essentially limited to short medication management appointments." (internal citations omitted)).

Moreover, in addition to the first two subsets of reasons the ALJ provided for discounting Plaintiff's subjective complaints, the ALJ provided a third reason.  That is, Plaintiff became a nurse's aide, worked part-time, and engaged in SGA at times.  Tr. 36.  Notably, Plaintiff testified that she continued to work, generally in excess of twenty hours per week, following her Alleged

18

Onset Date, which the ALJ could reasonably find significant. In short, the ALJ articulated several independent explicit reasons for discounting Plaintiff's subjective complaints, reasons which are collectively more than adequate to support the ALJ's credibility determination. Therefore, the Court cannot disturb that determination. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("[C]redibility determinations are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence." (internal citations omitted)).

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **GRANT IN PART and DENY IN PART** Plaintiff's Motion [DE 24], **DENY** Defendant's Motion [DE 25], and **REMAND** this matter to the Commissioner for further proceedings consistent with this Report.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 7th day of February 2022.

Jared M. Strauss
United States Magistrate Judge